## HANNAH OGLE v. J. D. BAKER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 12, 1890—Decided January 5, 1891.

[To be reported.]

1. A judgment or decree procured through the fraud and collusion of the parties to it, for the purpose of defrauding a third person, may be attacked by such person in a collateral proceeding, because he has no standing to appeal from it, or to require that it be vacated or reversed.
2. A party to the judgment, however, who alleges that it was obtained against him by fraud, may assail it directly, by appeal from or motion to open it, but he cannot impeach it collaterally, in an action to recover back money collected by regular process issued upon it.
3. A subsisting judgment, entered upon warrant of attorney, is no more subject to collateral attack than one obtained in open court; and the remedy of a defendant therein, alleging that the warrant was forged, and that, having notice, he was prevented by fraud from defending, must be by an application to open.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 44 July Term 1889, Sup. Ct.; court below, No. 148 June Term 1887, C. P.

On April 15, 1887, Hannah Ogle brought trespass against Jonathan D. Baker, charging in substance that the defendant, by means of a certain judgment against her fraudulently obtained by him, and an attachment-execution issued thereon, had wrongfully and fraudulently collected and received $377 of the moneys of the plaintiff. The defendant pleaded not guilty.

At the trial on January 22, 1889, the following facts were shown:

On December 22, 1886, a judgment for $500, with interest from March 16, 1886, in favor of the present defendant, and against the present plaintiff, was entered in the court below upon a note containing a warrant of attorney to confess judgment, purporting to be signed by Hannah Ogle, with her mark, attested by one James McDowell. Upon this judgment, an

attachment-execution, returnable to the first Monday of January, 1887, was issued, which was duly served by the sheriff upon Mrs. Ogle, and also upon the National Bank of Fayette county as garnishee. Mrs. Ogle did not appear in the attachment proceeding, and judgment was therein regularly obtained against the bank, as her garnishee, for $377, the amount of a deposit which she had in the bank. The judgment against the bank was collected by the sheriff upon execution process, and the amount so collected was applied to the costs and to the original judgment in favor of Baker. At the time when the original judgment was entered, and during the subsequent proceedings, Mrs. Ogle was living on the farm of Baker, who was her son-in-law, occupying a small house, close to the one in which he and his family resided. She took her meals with them, and spent the most of her time during the day with the family, but stayed at night in the smaller house. She was about 81 years old, and was unable to read or write.

The testimony for the plaintiff, Mrs. Ogle, tended to prove that the judgment note was never signed by her, nor by any person authorized by her to do so; that she was not indebted to Baker, had no knowledge that he held such a note, and was not aware of the entry of the judgment against her and the attachment proceedings thereon, until some time after the money had been paid over to the sheriff by the bank; that when the attachment was served upon her, she did not know what it was, but the sheriff explained to her that she was sued upon a board bill, and would have to come to town to see about it; that she made arrangements to do this, but when the time arrived for her to start to town, Baker, the defendant, persuaded her not to go, telling her that the business was nothing that needed her attention, but was something that concerned himself and he would attend to it; that by reason of Baker's representation and promise, she gave the matter no further attention. On the other hand, the testimony for the defendant tended to prove that some time prior to the date of the judgment note, Mrs. Ogle told Baker she intended to give him all she had; that a day or two before said date, while in Uniontown attending to some business for her, he procured the judgment note from an attorney, and after returning home acquainted her with its contents; that she afterwards signed

it with her mark in the presence of McDowell, and gave it to
Baker as a recompense for her maintenance during the nine
years she had resided on his property.

After reviewing the testimony, the court, EWING, J., charged
the jury in part as follows:

[The burden of proof rests upon the plaintiff; and if, after
going over all the testimony in this case, taking into consider-
ation all the facts that are established by the testimony which
you believe, you believe the defendant was guilty of fraud;
that this note was not signed by the plaintiff at all, but was a
forgery practiced upon the plaintiff by the defendant, and that
the subsequent proceedings were kept from her in furtherance
of that fraud, you would be justified in rendering a verdict in
favor of the plaintiff for the amount of money obtained thus
fraudulently upon the attachment proceedings, $377, with in-
terest from the time it was so received or obtained.] [2]   On the
contrary, if, after going over all the evidence, you do not be-
lieve the defendant was guilty of any such fraud upon the
plaintiff, your verdict should be for the defendant. . . . . .

The defendant asks the court to charge the jury that under
all the evidence in the case, the plaintiff is not entitled to re-
cover.

Answer: Refused. [1]

—The verdict of the jury was in favor of the plaintiff for
$419.41.

A rule for a new trial having been argued, the court, EWING,
J., filed the following opinion:

On the trial of this case, as well as on the argument of this
motion, it was strenuously insisted, by counsel for defendant,
that the action could not be maintained, because the judgment,
upon which the money here sought to be recovered was col-
lected, yet remained a valid and subsisting judgment of this
court, and could not be impeached collaterally.   And this is
now really the only question; for the jury very satisfactorily
disposed of the questions of fact.

The facts, as established by the verdict, are that the defend-
ant entered judgment against the plaintiff upon a forged note,
issued an attachment-execution thereon, and, having fraudu-

Opinion of Court below.

lently prevented the plaintiff from appearing in the attachment proceeding and deceived her as to its character, etc., obtained judgment against the garnishee and collected the funds attached, while all the time he had no claim of any kind against her, and she knew nothing of the matter until some time afterwards. He is her son-in-law; and during this time she was making her home with him, and the relations between them were confidential.

Now, what good reason is there why this action should not be maintained and recovery here allowed of the money thus fraudulently obtained? It cannot be denied that a judgment may be impeached collaterally for fraud, and that is just what is done here. Doubtless another course might have been pursued. Application might have been made to open the judgment, and its validity determined in a feigned issue, awarded on that application or in the original case after being opened, but that alone would not secure the return of the money collected. Possibly, an order of restitution might be awarded after the invalidity of the judgment was ascertained, but that is uncertain. Or, a bill in equity might have been filed for the purpose of having the judgment stricken off, the note canceled and the money collected refunded. But, whatever course should be adopted, it would require, as the first step, the establishment of the alleged fraud and consequent invalidity of the judgment, and that could in no way be more satisfactorily determined than it has been done in this case by the verdict of the jury.

In this proceeding, the alleged fraud has been established and the recovery of the money collected thereon obtained. True, the original judgment still remains unsatisfied, but what is there now to prevent the court upon application made, from striking off that judgment by virtue of the facts determined here? And thus, as briefly, directly and satisfactorily as possible the whole ground is covered and the entire controversy ended. Ordinarily, it would, perhaps, be better to apply first to have the judgment opened, but under the circumstances of the case nothing would have been gained thereby, and the defendant has in no way been prejudiced.

In principle, the case of Jackson v. Summerville, 13 Pa. 368, strikes me as identical with this, and to fully justify the course here taken. And I am the more induced to this opinion, because

advised that the defendant's financial circumstances are such that very possibly the plaintiff would lose all opportunity to recover her money, if she were forced to begin some new proceeding.

For the reasons here given, the motion for a new trial will be overruled.

—Judgment having been entered on the verdict, the defendant took this appeal assigning for error:

1. The refusal of defendant's point.[1]
2. The part of the charge embraced in [ ][2]

*Mr. R. P. Kennedy* (with him *Mr. Edward Campbell*), for the appellant:

1. Since December 22, 1886, a judgment in favor of J. D. Baker and against Hannah Ogle, perfectly regular, has stood upon the record unassailed. Another judgment, in an attachment-execution issued upon that record, founded upon the same cause of action, was obtained after due service of adversary process, and a portion of the debt due to Baker was collected through the agency of the sheriff. The judgment against Mrs. Ogle is conclusive against her right to recover in this case. The judgment rendered in the present action flatly contradicts the record of the former judgment, and the court cannot "judge against former judgments:" Year Book, 33 Hen. VI, 41. As a suit to recover back money collected by legal process, this action cannot be sustained: Federal Ins. Co. v. Robinson, 82 Pa. 357; 1 Selw. N. P., 82; 1 Archb. N. P., 267; Rapalje v. Emory, 2 Dall. 51, 231; Herring v. Adams, 5 W. & S. 459; Mann's App., 1 Pa. 29; Boas v. Updegrove, 5 Pa. 516.

2. The merits of a judgment cannot be overhauled in an original suit, either at law or in equity: Moses v. Macferlan, 2 Burr. 1009. In Travelers' Ins. Co. v. Heath, 95 Pa. 333, money paid on execution was recovered back, but the judgment which supported the execution had been reversed, and judgment had finally been entered for the defendant. Mrs. Ogle's only remedy, if her wrongs were not imaginary, was an application to the court to open the judgment against her: Dawson v. Morris, 4 Y. 341; Otterson v. Middleton, 102 Pa. 78; Hartman v. Ogborn, 54 Pa. 120; Jackson v. Summerville, 13 Pa. 359; Hall v. Hamlin, 2 W. 354; Hoffman v. Coster, 2 Wh. 453; Luck-

enbach v. Anderson, 47 Pa. 123; Cochran v. Eldridge, 49 Pa. 365; Commonwealth v. Trout, 76 Pa. 379; Tarbox v. Hays, 6 W. 401. No authority can be found sustaining an action for fraud or misconduct of the plaintiff in a previous action judicially and finally decided in his favor, at the suit of the defendant in the prior action. The parties to the original impugned litigation have had their day in court, and cannot have another day.

*Mr. A. D. Boyd* (with him *Mr. R. E. Umbel, Mr. G. D. Howell* and *Mr. E. H. Reppert*), for the appellee:

The assertion of the defendant's counsel that the only remedy of Mrs. Ogle was an application to open the judgment entered on the note is not sustained by the authorities he cites. In all of them, the principle laid down is simply that a party alleging fraud in the original judgment or decree, who has already been heard, or had an opportunity to be heard in that proceeding, upon such allegation, cannot re-try the alleged fraud in a collateral proceeding. Mrs. Ogle never had an opportunity to be heard upon the forgery of the note on which the original judgment against her was entered. She was fraudulently prevented from appearing in answer to the attachment by Baker, her son-in-law, of whose family she was a member. As between her and him, there has never been an adjudication. She has never had her day in court. A party cannot be bound without notice. The case of Jackson v. Summerville, 13 Pa. 368, cited for the appellant, is directly opposed to his position, and furnishes most ample reasons why the present judgment should be allowed to stand. As the court below says in its opinion, a judgment may be impeached collaterally for fraud, and that is just what has been done here.

OPINION, MR. JUSTICE McCOLLUM:

On December 22, 1886, a judgment was entered in the Court of Common Pleas of Fayette county, in favor of the appellant and against the appellee, for $500, with interest thereon from the 16th of March preceding. This judgment was entered upon and by virtue of a warrant of attorney contained in a note purporting to be executed by the appellee. An attachment-execution was issued upon it, which was duly served upon the

defendant therein, and the National Bank of Fayette county was summoned as garnishee. In due course of law, judgment was obtained against the garnishee for $377, and an execution was issued for its collection. The bank paid the amount thereof to the sheriff, who paid it to the appellant. In April, 1887, this suit was brought by the appellee to recover the amount so paid, and the substance of her claim is that the note on which the original judgment was entered was a forgery, and that she did not appear in answer to the attachment, because the appellant told her that she need not, and that he would attend to it for her. The judgment and the attachment proceedings founded upon it remain of record, unimpeached, and the question is, whether, while they so remain, an action for the recovery of the money collected and paid by virtue of them can be maintained.

The general rule is that money collected or paid upon execution cannot be recovered back, unless the judgment on which the writ issued is first vacated or reversed: Federal Ins. Co. v. Robinson, 82 Pa. 357; Travelers Ins. Co. v. Heath, 95 Pa. 333. The reason of the rule is well stated by Mr. Justice SHARSWOOD, in Federal Ins. Co. v. Robinson, supra, as follows: "An execution is the end of the law. To permit money so collected or paid to be reclaimed in a new suit, would lead to indefinite and endless litigation. If such suit could be maintained, then another might be brought to recover the money paid on the judgment and execution in it, and so on ad infinitum."

In Tarbox v. Hays, 6 W. 398, the plaintiffs brought an action of replevin to recover certain property which the defendant had purchased at a constable's sale on an execution issued on a judgment which he held against them. It was alleged by the plaintiffs that the judgment was procured by fraud and without notice to them, but it was ruled by this court that the defendants therein could not question it collaterally. A judgment or decree procured through the fraud and collusion of the parties to it, for the purpose of defrauding a third person, may be attacked by such person in a collateral proceeding, because he has no standing to appeal from it, or to require that it be vacated or reversed. A party however, who alleges that a judgment has been obtained against him by fraud, may assail it directly, by appeal from or motion to open it, but he cannot

impeach it in an action to recover the money collected by regular process issued upon it. If it be conceded that the averments of the appellee are true, her appropriate remedy was an application to open the judgment. The record of the attachment proceeding shows that she had notice of the judgment before anything was recovered upon it, and the accuracy of this record is not disputed by her. A judgment entered on a warrant of attorney is as impervious to collateral assault, as a judgment obtained in open court.

As to the truth or falsity of. the appellee's claim, or of the evidence submitted to support or to controvert it, we express no opinion. We merely decide that while the judgments in question remain of record unreversed, an action to recover the money collected upon them cannot be maintained.

The judgment is reversed.